2021 IL App (1st) 190810-U
No. 1-19-0810
June 30, 2021

FIRST DIVISION

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1)

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the Circuit Court |
| | ) | Of Cook County. |
| Respondent/Appellee, | ) | |
| | ) | No. 04 CR 06367 |
| v. | ) | |
| | ) | The Honorable |
| JEROME CARSON | ) | Joseph M. Claps, |
| | ) | Judge Presiding. |
| Petitioner/Appellant. | ) | |

PRESIDING JUSTICE WALKER delivered the judgment of the court.
Justices Hyman and Pierce concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Post-conviction counsel failed to comply with the requirements of Supreme Court Rule 651(c) where counsel did not inquire about a possible excuse for the untimely filing of petitioner's *pro se* post-conviction petition.

¶ 2     In 2006, Petitioner Jerome Carson pleaded guilty to three counts of attempt first degree murder and one count of aggravated arson and was sentenced to 32 years' imprisonment. He did not file a direct appeal. In 2013, Carson filed a section 2-1401 petition but withdrew that petition in 2014. In March 2015, Carson filed a *pro se* post-conviction petition, which was

advanced to second stage proceedings. Post-conviction counsel was appointed and filed a 651(c) certificate but did not file an amended or supplemental petition. The circuit court subsequently dismissed the post-conviction petition. For the following reasons, we reverse and remand.

¶ 3                                     BACKGROUND

¶ 4        The State indicted Carson for the February 17, 2004, attempted murders of Laura, Lanae, and Shanae Braswell and corresponding aggravated arson at 2652 West Washington Street in Chicago.

¶ 5        During pre-trial proceedings on May 2 and June 9, 2005, Carson's trial counsel stated that the circuit court had participated in a Supreme Court Rule 402 conference. On February 14, 2006, counsel informed the court, "This is Jerome Carson pursuant to a 402 conference, we are asking not for a 402 conference. We are asking this matter be continued to February 21, 2006."

¶ 6        On February 21, 2006, the circuit court conducted a plea hearing. Trial counsel explained the contents of the plea agreement:

> "We have reached an agreement subject to the Court's approval. Mr. Carson wishes to withdraw his previously entered plea of not guilty and enter a plea of guilty to three counts of attempt murder, counts 1, 3, and 5, and one count of aggravated arson, Count 7, in exchange for eight years IDOC on each count consecutive to one another for a total of 32 years IDOC with credit for 735 days."

¶ 7        Carson acknowledged that he understood the circuit court's admonishments regarding the terms of punishment resulting from a guilty plea. The circuit court also admonished Carson

about his rights to a jury trial and a Presentence Investigative Report. Carson waived both rights. Trial counsel then interjected to clarify that the conference held was an issues conference, not a 402 conference. The circuit court responded, "Thank you for the correction. This is not a result of a 402 conference. This is a result of an agreement between yourself and counsel and State, is that correct?" Carson responded that he understood that his guilty plea was not the result of a 402 conference.

¶ 8    The State recited the factual basis for each count, specifically stating: "At about 3:33 in the morning defendant Jerome Carson entered the bedroom, splashed gasoline about the bedroom, splashed gasoline on [Laura Braswell] and her two daughters and he set a match to set that room and Laura Braswell and her two daughters on fire" and that Carson admitted to setting the fire that resulted in the injuries to the victims.

¶ 9    The circuit court accepted Carson's plea as knowing and voluntary with a finding of guilt to the four counts. In aggravation, the State asserted that, "[Carson] has a substantial criminal history which we brought up during the 402 conference." In mitigation, trial counsel stated that the defense stands "by the agreement." Counsel then stated, "Also, as the State mentioned, there was a 402 held on this motion several months ago and I believe the mitigation had been offered at that time. We stand by that as well." Pursuant to the agreement, the circuit court imposed a sentence of a total of 32 years in the Illinois Department of Corrections, eight years on each count to be served consecutively.

¶ 10    On January 30, 2013, Carson filed a 2-1401 petition alleging, *inter alia*, that his aggravated arson conviction was void for violation of the one-act, one-crime principle. Carson also claimed that he would not have pleaded guilty had he known the aggravated arson statute was

"unconstitutional" and that he was deprived of the effective assistance of counsel at the plea stage. On May 16, 2013, the circuit court appointed counsel to represent Carson on the petition for relief from judgment.

¶ 11       On October 3, 2013, the parties discussed whether the petition should be reclassified as a post-conviction petition. The case was then continued for counsel to discuss with Carson the potential reclassification of his petition. On April 17, 2014, Carson's counsel informed the circuit court that: "I have gone through this petition that he filed with - - I went to Statesville on Monday. We went through. We discussed some case law with regard to it. At this point, he is going to withdraw this petition, Judge. If, in the future, he feels that there is something relevant that he needs to file, he can go ahead and re-file. Your Honor can appoint us if you think it's pertinent, but at this point, with what he has filed, we're withdrawing it." The circuit court granted the motion to withdraw the 2-1401 petition.

¶ 12       On March 9, 2015, Carson mailed the instant *pro se* post-conviction petition. Carson acknowledged the untimely filing, stating, "Petitioner has no knowledge of the judicial system of law, where he did not submit a motion to withdraw his guil[]ty plea within the required 30-days, where petitioner recently became aware of constitutional due process violations in his case." In his petition, Carson alleged: (1) he was denied due process by the circuit court's failure to have him present during a 402 conference held months prior to acceptance of his guilty pleas, where he was not informed of the essential elements of charges against him; (2) his conviction for aggravated arson must be vacated under the one act-one crime doctrine since it was based on the same physical act as his conviction for attempt first degree murder; and (3) he was denied effective assistance of counsel where his guilty plea was not knowingly and

4

intelligently entered and where his plea agreement through a 402 conference was negotiated and reached without his consent or presence in violation of his constitutional rights.

¶ 13        In support of his petition, Carson attached his affidavit stating [sic]:

> That on February 21, 2006, when I entered the Court room, there was a plea agreement reached in which I had no-knowledge of, or was present to hear this agreement, or to give consent to said plea agreement. That I was coerced by my Defense Counsel to make a hasty decision to plead guilty without the benefit of being informed of the charge or informed by counsel that a plea agreement had been finalized without my consent. That on the date (02/21/06) of my guilty plea, it was then clarified by the Court that said Conference was an issues Conference as stated in the Record, verifying I was not at said conference, or any conference dealing with my acceptance of a plea agreement until I first appeared in Court on the mention date, between myself, the State, or my Defense Counsel.

¶ 14        On March 17, 2015, the circuit court received Carson's petition and docketed it for April 2, 2015. On June 30, 2015, the court appointed counsel to represent petitioner at second-stage proceedings.

¶ 15        On June 29, 2016, Carson's post-conviction counsel informed the court that he ordered and received the transcripts from February 14 and 21, 2006, and would be setting up a phone call with Carson prior to filing his certificate. On December 13, 2016, counsel again stated that he received the two transcripts, needed to speak with Carson, and would be ready to file on the next court date.

¶ 16    On May 16, 2017, counsel filed his Rule 651(c) compliance certificate. The certificate averred that he had consulted with Carson as to his contentions of deprivations of constitutional rights, that counsel "obtained and examined the record of proceedings prior to, and including, the time of the plea of guilty was entered, and sentencing in this case," and that he had "not prepared a Supplemental Petition for Post-Conviction Relief as the petitioner's previously-filed *pro se* petition for post-conviction relief adequately sets forth the petitioner's claim of deprivation of his constitutional rights."

¶ 17    On August 8, 2017, the State filed its motion to dismiss. The motion argued Carson's petition was untimely, that he had not demonstrated a lack of culpable negligence, and that the underlying claims in the petition did not make a substantial showing of a constitutional violation. The State attached copies of the February 14 and 21, 2006 transcripts as exhibits. Post-conviction counsel did not file a responsive document or amend the *pro se* petition in response to the State's motion.

¶ 18    On May 17, 2018, the circuit court held a hearing on the State's motion. The State argued that the petition was untimely, there was no showing of lack of culpable negligence, and the issues raised were meritless. The State also argued that Carson's guilty plea was the result of a plea agreement, and no 402 conference was held.

¶ 19    In response, counsel addressed the issue of timeliness, stating that it was a *pro se* petition that had been docketed, he was subsequently appointed, and the petition was "proceeding accordingly." Counsel also reiterated that he complied with the requirements of Rule 651(c) and did not file a supplemental petition because Carson's *pro se* petition "adequately and competently put forth his claims of deprivation of constitutional rights." Finally, counsel

6

argued the merits of Carson's three claims of constitutional deprivation. He conceded that the first claim regarding a denial of due process lacked merit because there was no 402 conference, but instead, there was only a plea agreement between the parties. However, counsel argued that the other two claims were meritorious and made a substantial showing of a constitutional violation. Counsel submitted the guilty plea transcript in support.

¶ 20    The circuit court asked counsel his response to the State's argument that the petition was untimely. Counsel responded:

"Judge, I really don't have a response to that, other than I know the case was docketed by the Court. I'm sure they, at the time, considered a timeliness issue. The case was docketed by the Court, and I was subsequently appointed to handle this post-conviction, which I did. I don't believe there was any delay since I was appointed, and the case was docketed."

¶ 21    The court clarified that it was seeking a response to the untimely filing of the initial *pro se* petition, not counsel's timeliness. The following discussion took place:

[Counsel]: Judge, the only response I would have to the timeliness is that when the –Mr. Carson's *pro se* post-conviction petition was first observed by the Court and docketed, I was -- I would assume those timeliness considerations were addressed. It was --

[The Court]: No. I don't do that when I – if there is anything in the petition that raises a constitutional claim, I docket it. I've learned that from the Appellate Court's reaction to summary dismissal, so.

[Counsel]: Well, Judge --

[The Court]: That was not entertained.

[Counsel]: Well, I have no response to that, Judge, other than -- I can only say once the case was docketed and I was appointed, that we have proceeded accordingly. Whether the initial *pro se* petition was filed on time or was tardy, I have really no comment.

[The Court]: Okay. That's fine.

[Counsel]: I would just ask your Honor to consider it. I mean, we've come this far. I would ask your Honor to consider –

[The Court]: Sure, I will.

[Counsel]: -- the petition on its face.

[The Court]: Sure, I will. Okay….

¶ 22    On March 18, 2019, the circuit court issued a written order granting the State's motion to dismiss. The court found Carson's petition untimely and that Carson had not established a lack of culpable negligence for the untimeliness. The court also addressed the substantive claims and found that they did not make a substantial showing of a constitutional violation.

¶ 23    This timely appeal followed.

¶ 24                                ANALYSIS

¶ 25    On appeal, Carson argues that post-conviction counsel provided unreasonable assistance where counsel appeared to have been unaware of the concept of culpable negligence, failed to amend Carson's *pro se* post-conviction petition to allege available factual details showing Carson's lack of culpable negligence, failed to put Carson's one-act, one-crime claim into a

constitutional framework of ineffective assistance of plea counsel, and affirmatively damaged one of Carson's claims. He requests this court remand to the circuit court for further second stage proceedings with the appointment of a new post-conviction attorney.

¶ 26    The Post-Conviction Hearing Act, (Act) 725 ILCS 5/122-1 *et seq.* (West 2014) provides a post-conviction remedy to criminal defendants who claim a substantial violation of their constitutional rights occurred at trial. *People v. Edwards*, 197 Ill. 2d 239 243-44 (2001). At the first stage, the circuit court must independently review the post-conviction petition and determine whether the petition is frivolous or patently without merit. *Id.* "If the court determines that the petition is either frivolous or patently without merit, the court must dismiss the petition in a written order." *Id.*

¶ 27    If the petition survives the initial stage, counsel is appointed to amend the petition, and the State may file responsive pleadings. 725 ILCS 5/122-4 (West 2014). There is not a constitutional right to assistance of counsel in postconviction proceedings. *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). Instead, the right to counsel is wholly statutory and petitioners are entitled only to the level of assistance provided for by the Act. *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). "The Act provides for a 'reasonable' level of assistance." *Id.* To ensure such reasonable assistance, Supreme Court Rule 651(c) requires that post-conviction counsel: (1) consult with the petitioner either by mail or in person to ascertain his constitutional claims; (2) examine the record of the trial court proceedings; and (3) make any amendments to the *pro se* petition necessary to adequately present the petitioner's claims. *Id.* If counsel fails to fulfill any one of these requirements, "remand is required. . . regardless of whether the claims raised in the petition had merit." *Suarez*, 224 Ill.2d at 47.

9

¶ 28        Under Rule 651(c), post-conviction counsel has "an obligation to present the defendant's post-conviction claims to the court in appropriate legal form." *People v. Johnson*, 154 Ill.2d 227, 245 (1993). Counsel must, at minimum, "attempt to obtain evidentiary support for claims raised in the post-conviction petition." *Id.* Adequate representation includes "attempting to overcome procedural bars" that would otherwise defeat a petitioner's substantive claims. *Perkins*, 229 Ill.2d at 44.

¶ 29        However, fulfillment of the third obligation of Rule 651(c) does not require post-conviction counsel to advance frivolous or spurious claims on a petitioner's behalf. *People v. Pendleton,* 223 Ill. 2d 458, 472 (2006). "If amendments to a *pro se* post-conviction petition would only further a frivolous or patently non-meritorious claim, they are not "necessary" within the meaning of the rule." *People v. Greer*, 212 Ill. 2d 192, 205 (2004).

¶ 30        "Where a certificate in accordance with Rule 651(c) is filed, 'the presumption exists that petitioner received the representation that Rule 651(c) requires a post-conviction petitioner receive during second-stage proceedings.'" *People v. Mendoza*, 402 Ill. App. 3d 808, 813 (2010), quoting *People v. Rossi*, 387 Ill. App. 3d 1054, 1060 (2009). However, the presumption is rebuttable. *Perkins*, 229 Ill. 2d at 52. Compliance can be rebutted where the record on appeal contradicts counsel's Rule 651(c) certificate that asserts there were no amendments necessary for adequate presentation of petitioner's claims. *Id.*

¶ 31        The dismissal of a post-conviction petition is reviewed *de novo*. *Suarez,* 224 Ill. 2d at 41-42. We also review *de novo* the proper interpretation of a supreme court rule. *Id.*

¶ 32        In this case, it is undisputed that Carson's *pro se* petition was untimely. "If a defendant does not file a direct appeal, the post-conviction petition shall be filed no later than three years

from the date of conviction, unless the petitioner alleges facts showing that the delay was not due to [petitioner's] culpable negligence." 725 ILCS 5/122-1 (c) (West 2014). Carson's judgment of conviction was entered on February 21, 2006, and he did not file a direct appeal. Therefore, Carson had until February 21, 2009, to commence his post-conviction proceeding. He did not file his petition until March 17, 2015, making his petition more than six years too late.

¶ 33    "It is well settled that all citizens are charged with knowledge of the law." *People v. Lander*, 215 Ill. 2d 577, 603 (2005). Further, "[i]gnorance of the law or legal rights will not excuse a delay in filing a lawsuit." *Id.* To overcome the procedural bar of untimeliness, a petitioner must allege facts showing that the delay in filing was not due to his culpable negligence. *Perkins*, 229 Il. 2d at 43. Culpable negligence is "something greater than ordinary negligence and is akin to recklessness." *People v. Boclair*, 202 Ill.2d 89, 108 (2002). To demonstrate a lack of culpable negligence, the petitioner "must support his assertion of no culpable negligence with allegations of specific fact showing why his tardiness should be excused." *People v. Walker*, 331 Ill. App. 3d 335, 339 (2002).

¶ 34    Carson argues post-conviction counsel provided unreasonable assistance by failing to amend his *pro se* post-conviction petition to allege facts showing that the petition's untimeliness was not the result of Carson's culpable negligence. Carson maintains that counsel never reviewed records pertaining to his 2013 petition to adequately present his claims, and therefore, no presumption of compliance with Rule 651(c) should attach. Further, Carson argues that counsel's performance at the hearing on the State's motion to dismiss demonstrated his unawareness of culpable negligence and his need to address it.

11

¶ 35 We acknowledge that counsel committed errors in this case. It appears counsel was unaware that Carson's *pro se* petition was untimely even though the petition states, "[Carson's] delay in filing this petition is not due to his culpable negligence." Counsel should have at least recognized timeliness as a potential issue upon first reading the petition. Even if counsel was unaware of the timeliness issue at appointment, he was placed on notice when the State filed its motion to dismiss and provided timeliness as a ground for dismissal. Nonetheless, counsel failed to file an amended petition to respond to the State's motion. Further, it does not appear counsel ever consulted with Carson regarding a possible excuse or attempted any examination of the issue. Counsel's lack of preparation was made clear when he was not able to argue the timeliness issue at the hearing on the motion to dismiss.

¶ 36 A post-conviction petition may not be dismissed as untimely at the first stage of the proceedings. *Boclair*, 202 Ill. 2d at 99. The "timeliness of the petition and any excuse for a late filing are matters that counsel must provide assistance on at the second stage." *Perkins*, 229 Ill. 2d at 48. As a result of counsel's mistake, he neither prepared nor presented any substantive argument on whether Carson lacked culpable negligence for the delay. "Rule 651(c) requires counsel to amend an untimely *pro se* petition to allege any available facts necessary to establish that the delay was not due to the petitioner's culpable negligence." *Id.* at 49.

¶ 37 Citing *Perkins*, the State argues that counsel complied with Rule 651(c) when he attempted to save Carson's petition from being timed-barred at the hearing on the motion to dismiss, rather than in an amended petition. We find *Perkins* distinguishable on the issue of counsel's arguments made at the hearing on the motion to dismiss.

¶ 38    In *Perkins*, like here, post-conviction counsel concluded that no amendments to the *pro se* petition were necessary for an adequate presentation of petitioner's claims. *Perkins*, 229 Il. 2d at 38. The State moved to dismiss the petition as untimely. *Id*. At the hearing on the motion, petitioner's counsel argued that the appellate court's decision to vacate two of petitioner's convictions on direct appeal restarted the time for filing a post-conviction petition, petitioner could not have raised his claim until the appellate court vacated the convictions, and the court should nonetheless consider the claims in the interest of fairness. *Id*. at 39. Although our supreme court noted that these arguments were not compelling and possibly lacked merit, it found that counsel had "in effect" argued that the delay was not due to petitioner's culpable negligence and there was nothing in the record to indicate that petitioner had any other excuse. *Id*. at 51. "Counsel's argument was apparently the best option available based on the facts." *Id.*

¶ 39    Unlike in *Perkins*, counsel here presented no argument regarding culpable negligence. At best, counsel made a fairness argument. Because counsel mistakenly believed that the issue of timeliness had been already resolved, he apparently did not even examine the issue. We cannot assume, like the *Perkins* court, that counsel's "argument" was the best option available, since he did not know or review any options. Normally, the filing of a Rule 651(c) certificate triggers the presumption of compliance with the rule. *People v. Profit*, 2012 IL (1st) 101307, ¶ 31. However, Carson has successfully rebutted that presumption.

¶ 40    In *Perkins*, our supreme court held that:

"Rule 651(c) requires counsel to amend an untimely *pro se* petition to allege any available facts necessary to establish that the delay was not due to the petitioner's culpable negligence. In discharging this duty, counsel must inquire of the petitioner

13

whether there is any excuse for the delay in filing. As a practical matter, any potential excuse for the late filing will often be discovered by speaking with the petitioner. Counsel must also allege any excuse for the delay in filing apparent from the pleadings and the portions of the record counsel must review to present petitioner's claims." *Perkins*, 229 Ill at 49-50.

¶ 41 Accordingly, we find that counsel failed to comply with the third obligation of Rule 651(c): making "any amendments to the *pro se* petition necessary to adequately present the petitioner's claims." Because counsel did not even inquire about a possible excuse, he could not have determined whether an amendment was necessary or frivolous. This is not a case wherein counsel rejected a petitioner's claim that he believed to be meritless. Here, counsel simply did not research the issue to render an argument. We decline to hold that noncompliance with Rule 651(c) may be excused based on harmless error. *Suarez*, 224 Ill. 2d at 52. Accordingly, we cannot find that counsel provided a reasonable level of assistance. Dismissal of Carson's petition was therefore improper.

¶ 42                                CONCLUSION

¶ 43 For the foregoing reasons, the judgment of the circuit court is reversed, we remand the matter with directions that the circuit court appoint new counsel and hold new second-stage proceedings. New counsel is directed to comply with the requirements of Rule 651(c). For each issue asserted in the petition, the State will be allowed to file an answer or any appropriate motion.

¶ 44 Reversed and remanded with instructions.